632 P.2d 268

**June B. SHOLTY, Petitioner,**

v.

**William N. SHERRILL, Commissioner of the Pima County Superior Court, and John D. Sholty, real party in interest, Respondents.**

No. 2 CA–CIV 4077.

Court of Appeals of Arizona, Division 2.

July 17, 1981.

Gaila Davis, Tucson, for petitioner.

Harley Kurlander, Tucson, for real party in interest.

OPINION

HOWARD, Judge.

Petitioner is the mother and custodial parent of three children, ages 13, 11 and 8.

Her special action challenges an order of the respondent court denying her motion to amend a June 1980 order granting the children's father's Ohio visitation during the summer of 1981. Although we find no abuse of the respondent court's discretion, we assume jurisdiction to address this source of needless litigation—when children refuse, in varying degrees, to visit a non-custodial parent.

The Sholtys obtained a divorce in Ohio in 1976. Custody of their three children was awarded to the mother and the father was to have visitation on certain weekends, holidays, and three weeks each summer. The mother and children moved to Arizona in 1977 and have continued to live here. In June 1980 the father obtained an order from the Ohio court requiring the mother to provide him with reasonable visitation, specifically, a visit with them in Tucson from June 15 through June 20 and then for seven weeks' visitation in Ohio. We granted special action relief to the mother on June 20, 1980, holding that the Arizona court erred in concluding that it was required to give the Ohio order full faith and credit under the Uniform Child Custody Jurisdiction Act. We concluded that Ohio was neither the home state of the children nor did it have a significant connection with the children and their family to satisfy the jurisdictional requirements of the act. See *Sholty v. Carruth,* 126 Ariz. 458, 616 P.2d 918 (App.1980).

On June 23, 1980, a hearing was held on the father's request for visitation. According to Dr. Frank Petroni, a psychologist retained by the mother, all three children manifested fear reactions to an Ohio visit and, therefore, he recommended that any visit in Arizona be under direct supervision "so that the children can feel safe and secure from physical harm and from being kidnapped and taken to Ohio." Both the mother and father testified and the respondent court denied the father's request to have summer visitation with the children in Ohio in 1980. However, the court ordered

that the father be granted reasonable visitation including two weeks during the 1981 summer and six weeks each summer thereafter. The father was required to give the mother not less than 45 days' written notice of when the visitation would commence and end. It further ordered that the father be granted a one-week visitation during Christmas in the even-numbered years after giving similar notice. All travel expenses for the visitations were to be paid by the father and he was allowed to have telephone contact with the children. The court also ordered the mother to encourage the children to correspond and communicate with their father. On June 19, 1981, the mother filed a motion to amend the 1980 order because the visitation would seriously endanger the children's physical, mental, moral and emotional health. She alleged that the father had requested visitation from June 25 through July 16 and petitioned the court to deny visitation for the summer of 1981.[1]

On June 23, 1981, a hearing was held on the mother's motion. Dr. Irwin, the children's counselor at the Southern Arizona Mental Health Center for about 4½ months, testified that the children did not want to return to visit their father because of fear. In his opinion, the children would be endangered from an emotional standpoint, particularly the 11-year-old who had demonstrated symptoms of extreme anxiety resulting in sleeplessness, nightmares, and, at times, lack of appetite. This child also had a history of bronchial asthma before coming to Arizona and it was possible that his anxiety might create a problem for him. With respect to the 8-year-old, her fear was partially a reflection of her older brother's. The counselor also indicated that it would not be a reasonable alternative for the court to order one or two of the children to visit in Ohio because the children had formed a bond and were very protective of one another.

1. Pursuant to stipulation of the parties, the father was given three weeks' summer visitation in 1981 instead of only two weeks, for which he gave up the 1980 Christmas visitation.

Dr. Irwin also testified that the children had indicated that they regard Jim White, a friend of their mother, as their father and that White has assumed a parental role. According to him, "Mr. White handles these kids as a parent and in a father role." He further recommended severance of the father's parental rights and adoption of the children by White. He stated that because of the way White handles the children, the fact that he and the mother are not married would not be detrimental to the bonding of the family unit.

■ The record also reflects that the mother's compliance with the order regarding communication between the children and their father was only perfunctory. Although the father sent letters and gifts, only one letter was written to him. It was in September 1980 and was from the oldest child who made it clear that he and the other two children did not want to have anything to do with their father and had no intention of ever seeing him again. Although the mother knew of the letter's contents and that a Christmas visitation was planned, she did not seek counseling for the children until four months later.

A.R.S. § 25–337(A) provides:

"A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral or emotional health."

Generally, the question of whether to limit the visitation rights of the non-custodial parent is committed to the sound discretion of the trial court but the power is to be exercised with caution and restraint. Only under extraordinary circumstances should a parent be denied the right of visitation. *Reardon v. Reardon*, 3 Ariz.App. 475, 415 P.2d 571 (1966). This court recognized such extraordinary circumstances in the case of *Anonymous v. Anonymous*, 27 Ariz.App. 74, 551 P.2d 64 (1976), where the trial court, on its own motion, denied a father's visitation rights with his son until further order of the court because the father had been hospitalized for a mental disorder and was still

suffering from the same disorder. See also *Taraboletti v. Taraboletti*, 56 Ill.App.3d 854, 14 Ill.Dec. 350, 372 N.E.2d 155 (1978).

Initially we would point out that the record here is devoid of any evidence of any misconduct on the part of the father since the 1976 divorce that would detrimentally affect the children. Neither is there evidence of any deficiency or instability in the father's home atmosphere. He has remarried and has other children in the home. In June 1980 the respondent court succumbed to the children's fears and unwillingness to visit in Ohio because they had neither seen nor had contact with their father since they moved to Arizona in 1977. The father was restricted to supervised visitation with the children in Arizona and it has not been shown that such visitation adversely affected the children.

The record reflects that the children were unwilling to visit their father in Ohio and, according to the counselor, the children feared their father because of pre-divorce "abuse" and their extreme anxiety about the visit indicated that their emotional health would be endangered. The children also expressed fear about never seeing their mother again should they be required to visit in Ohio. The record also shows that the father, since June 1980, has made concerted efforts to communicate with the children and re-establish a relationship with them, as the court required. The children more or less rejected him but acquiesced in making phone calls, however, because they wanted no judicial reprisals, especially against their mother.

The Pennsylvania courts take the view that minor children can be required to visit the non-custodial parent despite their desire not to do so, and that the custodial parent can be directed to exercise parental authority over them so as to require compliance with a visitation order. See *Fernald v. Fernald*, 224 Pa.Super. 93, 302 A.2d 470 (1973); *Commonwealth v. Lotz*, 188 Pa.Super. 241, 146 A.2d 362 (1958). In the *Lotz* case, the mother contended that her 13-year-old child should not be forced to visit her father where it appeared that the father had struck the child and the child had kicked her father during her last visit and

where the child had a strong fear of her father and was so disturbed at the prospect of visiting him that it would be a rash gamble with her future to force her to make such visits. The court rejected the contentions and held that the best interests of the child would be advanced by effecting a reconciliation with her father, and since a reversal of the order of the trial court could only lead to a permanent estrangement between the child and father, it held that the court had the power to require the mother to exercise parental control to compel the child to visit her father. The court noted that there exists a danger that the parent having custody might use his or her position to alienate the other parent from the affections of the child, and if the court were to reverse the challenged order, it would provide an easy method for any person who has obtained custody to nullify visitation rights.

Petitioner's primary contention is that the court found that the children's welfare would be endangered by visitation and therefore abused its discretion in refusing to modify or amend the 1980 order pertaining to the 1981 summer visitation. We do not agree that the court made such a finding. It is true that the court indicated that the children "are now so messed up"; however, it also indicated that petitioner's attitude toward visitation had been a contributing factor. Moreover, while the counselor stated that the children's emotional health would be adversely affected by visitation, the weight to be given to this expert testimony is determined by the court sitting as the trier of fact, *Harris Cattle Company v. Paradise Motors, Inc.*, 104 Ariz. 66, 448 P.2d 866 (1968), and the court is not bound by the counselor's opinion, even though uncontradicted. *Stiwinter v. Roberts*, 153 Conn. 240, 215 A.2d 413 (1965). In matters such as child custody and visitation, we believe the opinion of a psychiatrist or psychologist is advisory only and not controlling. *Mecham v. Mecham*, 544 P.2d 479 (Utah 1975). The following statement by the family court of the City of New York in *Doe v. Doe*, 86 Misc.2d 194, 378 N.Y.S.2d 269 (1975) is apropos:

"The Court has no doubt that the children's expressed aversion for respondent is based ... on conflicting emotions stemming from petitioner's attitudes rather than on alleged and at worst minor instances of insensitive treatment by him. The evidence is convincing that the children and respondent are being deprived of visitation that would be increasingly beneficial if the children could rid themselves of their psychic stress in relation to it. Further, the irrational antipathy they express for respondent doubtless is a source, as the appointed psychiatrist testified, of psychic distress for them. There is no question that measures should be directed to attempt to heal these wounds." 378 N.Y.S.2d at 279.

We decline to interfere with the respondent court's exercise of discretion in favor of resuming visitation. There is support in the record for the court's belief that the mother's attitude contributed to the children's rejection of their father and that, hopefully, visitation with their father would ease their distrust of him.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.