735 P.2d 851

**Linda M. HENDRICKS fka Linda Mortensen, Petitioner/Appellee,**

v.

**Bruce MORTENSEN, Respondent/Appellant.**

**No. 2 CA–CV 5828.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 12, 1987.

Review Denied April 15, 1987.

Lieberthal & Kashman, P.C. by David H. Lieberthal, Tucson, for petitioner/appellee.

Rowland & Durazzo, P.C. by Margaret L. Maxwell, Tucson, for respondent/appellant.

## OPINION

HOWARD, Presiding Judge.

This is a modification of custody case. The facts considered in the light most favorable to the party who was successful below are as follows. A decree of dissolution of marriage was entered January 16, 1985, nunc pro tunc to November 1, 1983. The parties were given joint custody of their minor child Derek, who was born on October 14, 1980. Under this arrangement Derek stayed with his mother five nights a week and with his father two nights a week.

On November 21, 1984, Linda, believing she had been divorced since 1983, filed a petition requesting an order modifying the decree of dissolution in order to allow her to move to California with Derek so she could better herself financially and marry a man to whom she was engaged. She presented testimony that Bruce had threatened her and Derek and also testified that if the court did not modify the decree she would remain in Arizona. The trial court denied the petition, finding that there had not been a showing of changed circumstances since the dissolution trial on November 1, 1983.

On January 23, 1985, Linda left Tucson with Derek without letting anyone know where they were going. They went to Texas where she took up residence with Derek under an assumed name. She felt this action was necessary because after the January 16th hearing, Bruce slashed the tires on her car and told her that it could just as easily have been her throat instead of the tires. He also told her that she should commit suicide because it would be a lot easier on her than he would be. This conduct was not new. In September 1984, Bruce assaulted her. He also called her employer, leaving a message for her that she should have herself checked for herpes. In July 1985, Linda's and Derek's whereabouts were discovered and Derek was returned to Tucson, the parties agreeing that he would be in his father's custody until the custody hearing which occurred in December 1985. Both parties petitioned the court for sole custody. In the meantime, psychological evaluations were done on both parties. Linda had remained in Texas where she is employed and married to an electrical engineer.

The psychological evaluations did not reveal any startling information about either party. Dr. Burkholder, Bruce's retained psychologist, had no concerns about Linda as a parent and nothing negative to say

about her parenting. She felt there was a strong normal bonding attachment between Derek and his mother. Over the five months while Derek was with his father, Derek told Dr. Burkholder that he missed his mother and wanted to be with her more.

Dr. Ghertner, Linda's retained psychologist, worked jointly with Dr. Burkholder. He related that neither he nor Dr. Burkholder felt that Linda's ability as a parent was ever called into serious question. The relationship between Linda and Derek was described as being very good and very strong and the stronger parent-child bond existed between Linda and Derek. Derek's personal preference was to be with his mother. Ghertner also reported that Linda has a continuing fear of Bruce and could not live in the same city with him. He concluded that Linda should have the primary custody of Derek and that it would not be disruptive to move Derek back to his mother's residence on a permanent basis.

Dr. Morris, who performed a psychological test on Bruce and Linda, reported that Bruce's testing revealed that he had some confusion about sex-role identification, had a preoccupation with genital-related activity and had an inability to carry out close relationships. The test showed him trying to appear more mature than he was, having the need to be in control and suspicious, and living in a fantasy world at times. It also revealed his being superficial in relationships.

The trial court, finding that there had been a substantial and continuing change of circumstances so that joint custody was no longer feasible and finding that it was in the best interest of Derek that his custody be with his mother, modified the custody provisions, awarding sole custody to his mother with visitation rights in his father.

Appellant contends the trial court should not have modified the custody provisions because (1) there was no change of circumstances; (2) it considered evidence which was res judicata; and (3) it was not in Derek's best interest because his mother had previously "kidnapped" him. We disagree and affirm.

A.R.S. § 25–332(A) and (B) set forth the factors which the trial court may consider upon a petition to modify custody:

"A. The court shall determine custody, either originally or upon petition for modification, in accordance with the best interests of the child. The court may consider all relevant factors, including:

1. The wishes of the child's parent or parents as to his custody.

2. The wishes of the child as to his custodian.

3. The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest.

4. The child's adjustment to his home, school and community.

5. The mental and physical health of all individuals involved.

6. Which parent is more likely to allow the child frequent and continuing contact with the non-custodial parent.

B. The court shall consider evidence of spouse abuse as being contrary to the best interests of the child. If the court finds that spouse abuse has occurred, the court shall make arrangements for visitation that best protect the child and the abused spouse from further harm."

■ Although our statutes do not require that there be a showing of change in circumstances materially affecting the welfare of the child in order to modify a custody decree, our case law does require such a showing. *Johnson v. Johnson,* 13 Ariz. App. 574, 479 P.2d 721 (1971). The trial court has broad discretion to determine whether a change of circumstances has occurred and on review the trial court's decision will not be reversed absent a clear abuse of discretion, in other words, a clear absence of evidence to support its actions. *Pridgeon v. Superior Court,* 134 Ariz. 177, 655 P.2d 1 (1982).

Appellant contends the trial court erred in admitting evidence of his conduct prior to the January 16th hearing and that the issue of remarriage and leaving the state as grounds for modification had already been litigated, decided adversely to Linda

and was res judicata. We do not agree. In *Pridgeon v. Superior Court,* supra, the court quoted with approval from the Oregon case of *Harder v. Harder,* 26 Or.App. 337, 552 P.2d 852, 854–55 (1976):

"[O]nce it has been decided that a given set of circumstances either does or does not require the modification of the support or custody provisions of a dissolution decree, no subsequent motion based exclusively on those same 'circumstances' may be entertained. The allegation and proof of some additional change occurring since the entry of the prior order is prerequisite to any later modification. Once that additional change has been established, however, its significance need not be determined in a vacuum.

\* \* \* \* \* \*

The significance of the change occurring since the last order may, in fact, only become apparent when considered together with circumstances predating that order. The admissibility of specific items of evidence is to be determined not by whether that evidence relates to circumstances predating an earlier order but by its relevancy to the issues raised in the subsequent proceeding." 134 Ariz. at 180, 655 P.2d at 4.

 The significance of the threats made after the January 16th hearing, brought more sharply into focus by appellant's earlier conduct, show a continuing pattern of abusive conduct. The trial court did not err in admitting into evidence facts which were alleged in the first petition to modify the custody decree. Furthermore, the issue of whether a change in domicile would be grounds for modifying the decree was not res judicata. At the time of the first petition, Linda and Derek were both residing in Tucson. Although she wanted to leave, she said she would stay in Arizona if she had to. Since then, Linda has remarried and is living in Texas. The circumstances are not the same. It is obvious there can no longer be joint custody. It is obvious that the decree must be modified, and the only question is who is to have the sole custody of Derek. With all the evidence presented to it and taking into consideration the factors set forth in A.R.S. § 25–332, the trial court decided that Linda should have custody and we cannot say that the trial court erred.

In arriving at our decision we reject the notion that Linda's "kidnapping" of Derek forfeited her right to have his custody. While her conduct may be considered by the trial court, see A.R.S. § 25–332(A)(6), it is only one of the factors to be taken into consideration and not necessarily the determining factor. The primary emphasis should be on serving the best interest of the child rather than on punishing a wrongdoing. See *Wise v. Wise,* 14 Ariz.App. 125, 481 P.2d 296 (1971).

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.