NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CHRISTIAN ERIC DOWNUM, *Petitioner/Appellant*,

*v.*

DENISE ELAINE SHAY DOWNUM, *Respondent/Appellee*.

No. 1 CA-CV 15-0457 FC
FILED 6-7-2016

Appeal from the Superior Court in Coconino County
No. S0300DO201300006
The Honorable Ted Stuart Reed, Judge *Pro Tempore*

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

APPEARANCES

Christian Eric Downum, Flagstaff
*Petitioner/Appellant*

Denise Elaine Shay Downum, Flagstaff
*Respondent/Appellee*

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

**GOULD**, Judge:

¶1        Christian Eric Downum ("Father") appeals from the trial court's orders regarding legal decision-making authority, parenting time, spousal maintenance, and property allocation.  For the reasons stated below, we affirm the court's legal decision-making and parenting time orders.  We affirm the court's ruling Denise Elaine Downum ("Mother") is entitled to an award of spousal maintenance but reverse the order modifying the duration of the award.  We remand for the court to address the dissipation of Mother's retirement account.  In all other respects, we affirm the property allocation.

## BACKGROUND

¶2        Father filed a petition for dissolution in 2013.  While the dissolution case was pending, Father also filed for bankruptcy.  As a result, the court deferred ruling on the parties' property allocation while the bankruptcy case was pending, but proceeded to resolve legal decision-making, parenting time, child support, and spousal maintenance.

¶3        In February 2014, after a two-day trial, the court awarded Father sole legal decision-making authority and equal parenting time over the parties' minor child ("Child").[1]  The court also awarded Mother lifetime spousal maintenance of $2,500 per month ("February 2014 Order").

¶4        Following entry of the February 2014 Order, the issue of spousal maintenance was heavily re-litigated.  Mother successfully moved to amend the February 2014 Order, increasing her lifetime award to $2,750 per month.  A few months later, the court denied the parties' cross-petitions to modify spousal maintenance.  The next day, Father filed another petition to modify spousal maintenance.  After an evidentiary hearing, the court modified the award to $1,200 a month for six years ("February 2015 Order").

¶5        After the bankruptcy case was resolved, the court held a consolidated trial on the allocation of property, the parties' cross-petitions to modify legal decision-making and parenting time, and Mother's motion to "correct" the February 2015 Order regarding spousal maintenance.

---

[1]        The parties also have an older child who turned eighteen shortly after the petition was filed.

¶6             After trial, the court entered a final Decree in May 2015.  In its
Decree, the court determined it was in the Child's best interests to award
sole legal decision-making authority to Mother, with Father having
parenting time "no less than two evenings per week, from 5:00 PM to 6:30
PM[.]" *See* Ariz. Rev. Stat. ("A.R.S.") § 25-403 (Supp. 2015).[2]  Mother was
awarded the marital residence and was assigned responsibility for the
mortgage.  Each party was awarded specific personal property as well as
the remaining unallocated personal property currently in his or her
possession.  The court modified the February 2015 Order regarding spousal
maintenance to Mother, maintaining the $1,200 a month amount but
extending the duration of the award through her lifetime.  Father timely
appealed.

## DISCUSSION

### I.      Modification of Legal Decision-Making and Parenting Time

¶7             Father appeals the order awarding Mother sole legal decision-
making authority and reducing his parenting time to "no less than two
evenings per week, from 5:00 PM to 6:30 PM[.]"   We review an order
modifying legal decision-making and parenting time for an abuse of
discretion.  *Baker v. Meyer*, 237 Ariz. 112, 116, ¶ 10 (App. 2015) (citations
omitted).

### A.      Premature and Insufficient Petition

¶8             Father contends Mother's December 2014 petition to modify
legal decision-making and parenting time was premature because (1) it was
filed less than one year after the February 2014 Order was entered, and
(2) Mother's petition did not contain the requisite allegations allowing the
filing of a premature petition.  *See* A.R.S. § 25-411(A) (Supp. 2015) (A motion
to modify legal decision-making or parenting time shall not be filed earlier
than one year after the order to be modified, "unless the court permits it to
be made on the basis of affidavits that there is reason to believe the child's
present environment may seriously endanger the child's physical, mental,
moral or emotional health.").

¶9             Father's argument is moot.  The requirements of A.R.S. § 25–
411 are procedural rather than jurisdictional and are intended to "prevent
repeated or insubstantial motions for modification." *In re Marriage of
Dorman*, 198 Ariz. 298, 302, ¶ 11 (App. 2000) (internal quotation omitted).

---

[2]       Absent material revision after the relevant date, we cite the current
version of the statutes.

Failure to comply with these procedural requirements may be challenged by special action "prior to a resolution on the merits." *Id.* at 302–03, ¶¶ 11–12 (declining to review noncompliance with A.R.S. § 25–411 on direct appeal). Where, as here, an appeal is taken from a final judgment after the trial court has conducted an evidentiary hearing, evaluated the case on the merits, and found sufficient cause for modification, "the time for achieving the statute's intended protections . . . has passed." *Id.* at 302, ¶ 11. We find no error.

## B. Evidentiary Rulings

**¶10**        Father also contends the trial court improperly considered evidence regarding the parties' relationship and custody of the Child prior to the February 2014 Order. The court sustained some objections to testimony relating to 2012 and 2013 events but noted some of the other older evidence provided background information relevant to its custody determination. The court acted within its discretion in allowing Mother to testify about this background information. *See Pridgeon v. Superior Court (LaMarca)*, 134 Ariz. 177, 180 (1982) (holding court may consider prior circumstances in determining whether change has occurred); *Hendricks v. Mortensen*, 153 Ariz. 241, 243-44 (App. 1987) (same).

**¶11**        Father argues the court abused its discretion by allowing hearsay evidence of the Child's statements. However, the court considered only statements relating to the Child's wishes as to custody and parenting time; the court specifically declined to consider other statements by the Child that it concluded "should have been subject to cross-examination[,]"and also excluded testimony that called for double hearsay, *i.e.*, what the Child said others had said. The court concluded the Child, 16 years old, was old enough for his wishes to be considered, and, given the custody evaluator's expertise in child psychology, ordered the evaluator to perform the interview. *See* A.R.S. § 25-403(A)(4) (stating one factor in determining the best interests of the child is the wishes of a child that is of suitable age and maturity); Arizona Rule of Family Law Procedure ("Rule") 12 (authorizing interview to ascertain child's wishes). We find no abuse of discretion.

**¶12**        Next, Father asserts the court abused its discretion by admitting and considering the transcript of the Child's interview with the custody evaluator despite Mother's failure to disclose the transcript.

**¶13**        The parties did not stipulate or request to seal the transcript; thus, the court did not abuse its discretion in allowing the transcript of the

4

interview into evidence or considering it as evidence of the Child's wishes. *See* A.R.S. § 25-403(A)(4). The court ordered the evaluator to interview the child with a court reporter present. The court also acted in accordance with Rule 12(A), which provides that a child's interview be recorded by a court reporter and the record may be sealed for good cause or by stipulation of the parties. *See* Ariz. R. Fam. L.P. 12(A). However, Rule 12(A) also provides the record of an interview must be available to the parties unless they have agreed otherwise, and may be considered by the court.

**¶14** Father contends the Child's statements were unreliable because it was likely he knew Mother would purchase the transcript. However, beyond his own conjecture, Father provides no evidence the Child possessed such knowledge, and, in any event, pursuant to Rule 12(B), any child undergoing an interview must be told his interview is going to be made part of the court record. We will not reweigh the evidence the trial court considered on this issue, and conclude the court did not abuse its discretion by considering the Child's statements. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).

### C. Evidence Supporting Legal Decision-Making and Parenting Time Orders

**¶15** In making its custody orders, Father argues the court erred in failing to properly weigh the custody evaluator's testimony. The weight given the custody evaluator's testimony and report was for the trial court as fact finder; we do not reweigh evidence on appeal. *See Sholty v. Sherrill (Sholty)*, 129 Ariz. 458, 461 (App. 1981).

**¶16** In the custody evaluator's 2013 report, he expressed concern Mother was engaging in alienating behavior. Consistent with this report, during the May 2015 trial, the evaluator testified that the Child's relationship with Father significantly deteriorated since 2013, from which he inferred that Mother continued to engage in such improper behavior. He also testified the court should restrict Mother's alienating behavior.

**¶17** However, the custody evaluator also provided testimony that supported the court's eventual orders concerning legal decision-making and parenting time. The evaluator testified that when Father moved the Child in with his girlfriend and her three children in June 2014, this caused a situation that was already stressful to become "increasingly intolerable," thereby causing more anger and distance between Father and the Child. The evaluator also stated that limiting Mother's parenting time, as Father proposed, would be difficult on the Child.

¶18 Here, in addition to the evaluator's testimony, the court heard conflicting evidence about the cause of the deterioration of the Child's relationship with Father. Clearly, the Child was experiencing distress as a result of the February 2014 Order granting Father sole legal decision-making and equal parenting time. Additionally, Father's new living arrangements caused significant and continuing changed circumstances that negatively affected the Child. Although Father blames Mother for the Child's distress, the trial court saw and heard the witnesses. We defer to the court's determination as to the weight to give this conflicting evidence. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶19 We also conclude the evidence supports the court's finding that joint legal decision-making was not possible because the parties were unable to make joint decisions in the Child's best interests. *See* A.R.S. § 25-403.01(B)(3). We therefore affirm the court's conclusion it was in the Child's best interests that Mother have sole legal decision-making authority.

¶20 Father argues the reduction of his parenting time was not in the Child's best interests, was punitive, and therefore was an abuse of discretion. Father also argues the court abused its discretion by failing to order reunification therapy.

¶21 The court reduced Father's parenting time based on its finding that "[m]andated extensive and overnight [p]arenting time with [Father] would currently endanger [the child's] emotional health." *See* A.R.S. § 25-411(J) (A court may modify parenting time when modification would serve the best interests of the child, and shall not restrict parenting time unless it finds parenting time "will endanger seriously the child's physical, mental, moral or emotional health.").

¶22 Based on an interview with the Child, the custody evaluator reported that forcing the Child and Father into extensive and overnight parenting would cause more anger and distance between them. Previous attempts at therapy had failed to improve the Child's relationship with Father and caused the Child to feel angry and alone. The Child also reported feeling he would respond violently if he were physically forced to attend counseling with Father. Given this evidence, we find no abuse of discretion in the court's decision concerning parenting time.

## II. Modification of Spousal Maintenance

¶23 Father appeals the court's modification of spousal maintenance from the six-year award in the February 2015 Order to the lifetime award in the Decree three months later. Father argues Mother was

not entitled to any spousal maintenance, and, alternatively, the amount and duration of the award was an abuse of discretion.

**¶24**        "The question of spousal maintenance is left to the sound discretion of the trial court, and an appellate court will not substitute its judgment for that of the trial court unless there has been a clear abuse of discretion." *Deatherage v. Deatherage*, 140 Ariz. 317, 319 (App. 1984).  To modify spousal maintenance, there must be evidence of "changed circumstances that are substantial and continuing[.]" A.R.S. § 25-327(A) (Supp. 2015).

**¶25**        The February 2015 Order regarding Mother's eligibility for spousal maintenance was based on the court's findings Mother (1) lacked sufficient property, including property apportioned to her, to provide for her reasonable needs; (2) was currently unable to be self-sufficient through appropriate employment; and (3) had a marriage of long duration and was of an age that may preclude the possibility of finding adequate employment.  *See* A.R.S. § 25-319(A)(1), (2), (4) (2015).  Father argues, however, that Mother is voluntarily unemployed, is able to support herself through adequate employment, and was awarded sufficient property to provide for her reasonable needs.

**¶26**        The record supports Mother's eligibility for spousal maintenance.  Father does not contest the fact the parties had a marriage of long duration:  they were married for over twenty-six years.  A.R.S. § 25-319(A)(4).  As to Mother's employment situation, there is no evidence showing that her ability to find adequate employment changed in the three months between the February 2015 Order and the May 2015 Decree.  Thus, as to this factor, the evidence showed that at the time the Decree was entered Mother was still eligible for spousal maintenance because she was unable to be self-sufficient through appropriate employment.  *See* A.R.S. § 25-319(A)(2).

**¶27**        Father also challenges the amount of spousal maintenance ordered in the Decree, arguing that because Mother was awarded the marital residence, which she can sell or rent for additional income, she now has adequate property to provide for her needs.[3]  *See* A.R.S. § 25-319(B)(9). We disagree.

---

[3]        Father also argues the amount of spousal maintenance should have been reduced because Mother was capable of supporting herself through

¶28        Although Father suggests the equity in the residence was $51,200 to $163,650, other evidence showed the equity was only $20,000 to $25,000.  Indeed, even if Mother sold this asset, she would have to pay for housing.  Mother was awarded a house with significant mortgage debt, a car, personal property of an unspecified value, and an interest in Father's retirement account.  None of these assets are significantly liquid to provide for Mother's reasonable needs.

¶29        Father also claims he cannot afford to pay spousal maintenance because he was also ordered in the Decree to pay the majority of community debt.  *See* A.R.S. § 25-319(B)(4).  However, Father received a larger portion of community personal property (the parties' collection of military memorabilia) than Mother to pay off this debt.  Father also argues he will be unable to afford the spousal maintenance payment when he retires.  The spousal maintenance award is modifiable as to amount and duration upon a proven change in circumstances that is substantial and continuing.  *See* A.R.S. § 25-327(A).  Father's speculation about his future income is not an appropriate consideration in determining the current spousal maintenance award.

¶30        Finally, Father argues the court had no basis for modifying the six-year spousal maintenance award in the February 2015 Order to the lifetime award in the Decree.

¶31        The Decree modified the February 2015 Order regarding spousal maintenance "in light of the allocation of community property and community debts[.]"   Although the court properly reconsidered spousal maintenance in light of the final property allocation, *see* A.R.S. § 25-319(B)(9), in modifying the spousal maintenance award, the court failed to explain how the final property and debt allocation was a sufficient change in circumstances to support the modification.

¶32        We agree with Father that the record does not support the order modifying the duration of Mother's spousal maintenance.  Clearly, the final property and debt allocations did not justify an increase in spousal maintenance, because these allocations did not place Mother in a worse position financially than she was at the time of the February 2015 Order.  Mother received the community residence with an "uncertain equity" value.  *See supra* ¶ 28.  To the extent Mother received more equity in the

---

appropriate employment as an attorney.  However, as noted in ¶ 26, above, no evidence showed any change in Mother's employment situation between the February 2015 Order and entry of the Decree.

home than Father, this was awarded as an offset against $3,200 Father owed in past child support. No value was placed on the personal property awarded to the parties, and, in the absence of an equalization payment, we presume the personal property was allocated equally. The community interest in Father's retirement account was also divided equally. Although Father was ordered to pay $56,000 in community debts pursuant to the bankruptcy action, in exchange, Father was awarded $81,000 in community property (the military memorabilia) to pay those debts. The parties' employment situations also had not changed in the short time between the February 2015 Order and the Decree.

¶33　　　Accordingly, we reverse the court's modification of the duration of Mother's spousal maintenance award, and remand for reconsideration, if warranted, based on the property allocation adjustment discussed below.

## III.　Property Allocation

¶34　　　The court awarded specific items of personal property to each party based on their detailed inventory lists. Each party was awarded all other unallocated property in his or her possession. Father argues, however, that some of his separate property remained in the marital residence; as a result, it was in Mother's possession and erroneously awarded to her in the Decree.

¶35　　　Prior to trial, Father was allowed access to the marital residence to inventory the community property and his separate property. The parties disputed whether Mother blocked Father's access to closets and the attic. Although Father claimed Mother's actions prevented him from making a complete inventory, he also admitted that a complete inventory would have been difficult because the house contained thousands of items of personal property.

¶36　　　The court awarded Father certain property from the inventory lists and sanctioned Mother for her failure to comply with its order granting Father's access to the residence. Given the quantity of the property involved, we cannot say the court abused its discretion by awarding each party the property in his or her possession and imposing a monetary sanction against Mother.

¶37　　　Father argues the trial court abused its discretion by failing to order Mother to reimburse him for $18,000 in Father's separate property she withdrew to pay community debts. The parties disputed whether Father agreed to use the funds to pay off community debt. We will defer to the

trial court's determination of witnesses' credibility. *Gutierrez*, 193 Ariz. at 347, ¶ 13. The trial court did not abuse its discretion on this issue.

**¶38** Finally, Father argues he was entitled to an offset for the $11,766 Mother withdrew from her retirement account in violation of the court's preliminary injunction enjoining the parties from disposing of community assets. *See* A.R.S. § 25-315(A).

**¶39** Mother agreed the retirement account was a community asset. She testified that she used $2,700 from the account to pay her 2014 taxes, and that she was subject to an unspecified penalty for the early withdrawal. Mother testified that she withdrew the remaining $9,000 for "necessities," but otherwise failed to account for these funds.

**¶40** The Decree is silent regarding Mother's expenditure of these community funds. Therefore, we remand for the court to address the dissipation of this community asset. If the resolution of this issue on remand affects any of the factors relating to spousal maintenance, the court may, in its discretion, take it into account as it reconsiders the spousal maintenance award.

## CONCLUSION

**¶41** We affirm the court's legal decision-making and parenting time orders. We also affirm the court's ruling Mother is entitled to spousal maintenance, as well as the amount of spousal maintenance, but reverse the order modifying the duration of spousal maintenance from six years to lifetime. We remand for the court to address the dissipation of Mother's retirement account and, if warranted, modify the spousal maintenance award in view of the dissipation of Mother's retirement. In all other respects, we affirm the property allocation. Each party shall pay his or her own costs on appeal.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA