NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CEDRIC HANDY, *Petitioner/Appellee*,

*v.*

BRITTANI SHAW, *Respondent/Appellant.*

No. 1 CA-CV 25-0461 FC

FILED 03-02-2026

Appeal from the Superior Court in Maricopa County
No. FC2018-071435
The Honorable David W. Garbarino, Judge

**AFFIRMED**

COUNSEL

Connelly Law Office PLLC, Mesa
By Lawton Connelly
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

**J A C O B S**, Judge:

¶1 Respondent Brittani Shaw ("Mother") appeals the superior court's order denying her petitions seeking to modify legal decision-making and parenting time. That order left in place the court's prior order awarding Cedric Handy ("Father") sole legal decision-making authority for their child B.H. ("Child"), restricting Mother's parenting time to supervised therapeutic visits, and barring Mother from Child's school. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. Mother and Father Trade Abuse Allegations and Share Legal Decision-Making and Parenting Time as to Child.

¶2 Mother and Father are the parents of Child, born in March 2018. They did not marry, and a custody dispute ensued. During it, each party alleged the other parent abused Child, but the court found that neither parent had presented evidence of abuse. While continuing to claim Father abused Child, Mother requested an equal parenting time arrangement. In June 2023, the court awarded the parties joint legal decision-making and equal parenting time.

¶3 Shortly after the June 2023 order, Mother again alleged that Father abused Child. On June 27, 2023, the Department of Child Safety (DCS) removed Child from Mother's care because of suspicion Mother abused Child as part of fabricating her own abuse allegations.

### B. The Court Grants Father Sole Legal Decision-Making and Greatly Restricts Mother's Parenting Time After Finding Mother Abused Child, Manufactured Evidence of Abuse, and Made False Allegations Against Father.

¶4 Two days after DCS removed Child from Mother's care, on June 29, 2023, Father petitioned to modify legal decision-making and parenting time. The court held an evidentiary hearing on February 21, 2024 and, on March 11, 2024, issued an order granting Father the relief he sought, making detailed findings.

¶5 *First*, the court found Mother abused Child and made false allegations that Father had abused him. The court concluded that these facts were a significant and continuing change in circumstances materially affecting Child's welfare that could justify modifying its prior legal decision-making and parenting time order.

¶6            *Second*, the court considered whether a modification of legal decision-making and parenting time was in Child's best interests, as A.R.S. § 25-403 requires.   The court made detailed findings as to Mother's treatment of Child, including that Mother:  (1) "has committed acts of child abuse against the [C]hild to manufacture evidence of abuse by Father"; (2) "had the [C]hild forensically interviewed no less than three times regarding [the] allegations of abuse"; and (3) presented Child to Phoenix Children's Hospital for a Sexual Assault Nurse Examiner examination, "claiming that Father had anally penetrated the [C]hild and choked him," even though all evidence during the relevant periods showed that Father was never left alone with Child.

¶7            The court rested its analysis in part on DCS' support for the conclusion that Mother abused Child and that it would be against Child's best interests for Child to remain with Mother.   The court noted "DCS believed that Mother was in fact responsible for manufacturing the evidence of abuse and that she was the individual who physically assaulted the child," and that DCS "proposed substantiating the abuse allegations against Mother."   The court also found Mother's actions contributed to Child suffering from night terrors for two months and that Mother had alleged abuse in Child's presence, resulting in concerns that Child was echoing those allegations during interviews.   The court determined this conduct reflected a pattern of attempting to restrict or eliminate Father's parenting time rather than promote Child's welfare.

¶8            Mother presented evidence of her mental-health evaluation, which the court cited in reaching its conclusions about Mother's treatment of Child.  The court noted that:  (1) the evaluator did not contact Father and appeared unaware that Child had been removed from Mother's care by DCS; (2) Mother told the evaluator that the court removed Child because the court "does not like [her]"; and (3) Mother continued to make false allegations against Father and, "[d]espite [] clear evidence to the contrary," "insist[ed] she was not the person who abused the [C]hild."

¶9            Meanwhile, the court found Child adjusted well in Father's care.  Since residing with Father, Child no longer experienced enuresis issues or terrors.   Child attended school, enrolled in guitar lessons and karate, and, despite some difficulty with math and reading, met his kindergarten benchmarks.  The court further found Father was more likely to facilitate frequent, meaningful, and continuing contact with the other parent.

¶10        Given these findings, the court awarded Father sole legal decision-making authority, restricted Mother's parenting time to four hours per week of supervised therapeutic visits, and barred Mother from exercising visitation at Child's school or being present on campus, which it found necessary to protect Child's physical and emotional welfare. Finally, "[f]or the Court to consider lifting the supervision requirement," it required Mother to "engage in therapy with a forensically informed therapist who shall be provided with the DCS reports," the Best Interests Assessment, Court-Appointed Advisor materials, Mother's psychological evaluation, and the court's orders.

### C.        The Court Denies Mother's Petitions to Modify the March 2024 Order.

¶11        In July 2024, Mother petitioned the court to modify the order requiring the therapeutic supervised parenting time, arguing that she had discharged her obligations under the March 2024 order by engaging with a forensically informed therapist. In November 2024, Mother petitioned the court to modify legal decision-making, arguing Father was not meeting Child's medical and educational needs, had ongoing housing instability, and was not communicating through the court-ordered co-parenting application.

¶12        The court held an evidentiary hearing on Mother's petitions. Mother appeared with counsel and presented testimony from her forensically informed therapist and the therapeutic supervisor. Father did not appear at the hearing. The court noted Father's absence and later admonished him for failing to appear.

¶13        The court denied Mother's requests in an under advisement ruling, finding Mother had not demonstrated a material change in circumstances affecting Child's welfare as to warrant modifying the March 2024 order. The court found that the testimony and reports from Mother's forensically informed therapist did not explain or reconcile the court's prior findings that Mother had abused Child to fabricate allegations against Father, and that Mother continued to deny wrongdoing. The court concluded that these deficiencies did not provide the needed assurance that Mother no longer endangered Child or that she would comply with parenting time restrictions.

¶14        Considering the A.R.S. § 25-403(A) best-interests factors, the court found several factors neutral and others weighing against modification. The court repeatedly concluded that the credible evidence

did not establish a material change warranting relief. The court expressed concern about Child's medical needs and noted Father's failure to appear to update the court, admonishing Father. The court nonetheless found that any concerns as to Father did not outweigh its concerns regarding Mother's mental health and the abuse-related findings underlying the March 2024 order.

**¶15** The court thus denied both petitions, leaving the March 2024 order in place. Mother timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶16** Father did not file an answering brief. When an appellee fails to file an answering brief, we may treat the failure to respond as a confession of error. *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966). However, we do not apply that rule mechanically when a child's best interests are at issue. *See Hays v. Gama*, 205 Ariz. 99, 102 ¶ 18 (2003) ("We have repeatedly stressed that the child's best interest is paramount in custody determinations."); *see Hoffman*, 4 Ariz. App. at 85. Because this appeal concerns parenting time and legal decision-making determinations that affect Child's best interests, we decline to treat Father's failure to file an answering brief as a confession of error and address the merits of Mother's appeal.

## I. The Court Did Not Abuse Its Discretion in Denying Modification Based on Mother's Therapeutic Evidence.

**¶17** Mother argues the court abused its discretion by conditioning modification on her admission to past conduct and improperly reapplying findings in the March 2024 order. We disagree.

**¶18** As an initial matter, Mother's framing — that the court improperly considered facts it found in March 2024 — misconceives the court's role in considering petitions to modify legal decision-making or parenting time. The court must determine "whether there has been a change of circumstances materially affecting the welfare of the child." *Backstrand v. Backstrand*, 250 Ariz. 339, 343 ¶ 14 (App. 2020) (quoting *Black v. Black*, 114 Ariz. 282, 283 (1997)). That inquiry necessarily requires measuring the present against the past — in this case, the facts the court found in March 2024. If the court finds such a change of circumstance, the court will then consider whether modification is in the child's best interests. *Id.* We review the court's ruling on these questions for abuse of discretion. *Id.*

**¶19**         The March 2024 order imposed therapeutic supervision based on findings that Mother abused Child to manufacture evidence of abuse against Father and persisted in false allegations despite contrary evidence. Those findings formed the basis for the restrictions on Mother's parenting rights.   For the court to remove these restrictions requires Mother to demonstrate a change of circumstance that affects the welfare of Child — which, here, could have been demonstrating that the facts found in March 2024 were untrue, or could have been demonstrating that Mother had accepted responsibility for the wrongs those facts embody.

**¶20**         The court did not abuse its discretion by concluding Mother did neither.   Mother complains the court created "an impossible catch-22 by conditioning modification on Mother's willingness to confess to the very conduct she denies."   But the court properly suggested a way Mother could demonstrate a change in circumstances that could show Child would be safe with her.   The record shows the court did not demand a confession.   To the contrary, the court confirmed that Mother's forensically informed therapist had reviewed the DCS reports, the Best Interests Assessment and Court-Appointed Advisor materials, and Mother's psychological evaluation.   The court probed the discrepancy between those materials, each documenting findings of abuse, and the therapist's opinion that Mother posed no current risk to Child.   When asked whether Mother denied the conduct described in those materials, the therapist ultimately confirmed that she did.   The court had to consider whether Mother's continued denial undermined the probative value of the therapeutic opinions offered to show a material change in circumstances.   We see no abuse of discretion in its resolution of that question.

**¶21**         In denying Mother's petition, the court reasoned that Mother's therapeutic evidence did not explain or reconcile its prior findings with Mother's current mental state.   The court observed that Mother "seemingly continues to deny that she engaged in any wrongdoing against the Child."   The court found that the therapist's testimony did not "explain the purported transformation of Mother's mental health from someone who abused the Child for the purpose of limiting Father's parenting time to someone who is safe to be with the Child unsupervised."   Given its view of the totality of the case's record, the court did not abuse its discretion by finding the therapist's opinions "[did] not give the Court any comfort Mother is not a danger to the Child or that Mother is likely to honor the Court's orders."   *See  Little v. Little*, 193 Ariz. 518, 523 ¶ 14 (1999) (holding that the "primary task" for a trial court is to weigh the evidence and consider all the circumstances to determine whether modification is warranted).

**¶22** Mother's suggestion that the court should not consider facts already found is incorrect as a matter of law. Once a change in circumstances is alleged, Mother's parenting capabilities should not be assessed "in a vacuum." *See Hendricks v. Mortensen*, 153 Ariz. 241, 244 (App. 1987) (quoting *Pridgeon v. Superior Court*, 134 Ariz. 177, 180 (1982)). To the contrary, the court may consider prior circumstances to evaluate the present risk and Child's best interests. *See id.* That's what the court did here, given its earlier findings of abuse. Where a prior order rests on findings of child abuse, a parent's continued denial of that conduct bears on the court's assessment of the parent's insight, ability to mitigate risk, and likelihood of future compliance with the court's orders. *See In re Pima Cnty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990) (explaining in a dependency action that parents' present denial of responsibility for past abuse and neglect supports a finding they are not "presently willing to or capable of exercising proper and effective parental care and control"); *see Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51 ¶¶ 16–17 (App. 2016) (holding in dependency that "domestic violence need not be continuous or actively occurring" if it remains substantiated and unresolved, "particularly" where the parent denies the conduct). For these reasons, the court acted within its discretion in finding that Mother failed to demonstrate a material change in circumstances affecting the Child's welfare. Because the court did not abuse its discretion by concluding that Mother's therapeutic evidence did not justify modifying the March 2024 order, we see no error.

## II. The Court Acted Within Its Discretion in Prohibiting Mother's Presence on Child's School Campus.

**¶23** Mother argues the order prohibiting her presence on Child's school campus violates her fundamental right to direct Child's education under the Fourteenth Amendment and A.R.S. § 1-602(A)(1). We disagree.

**¶24** Although parents possess a fundamental liberty interest "in the care, custody, and management of their children," that right is not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97 ¶ 7 (App. 2016). Those rights may be limited where it is necessary to serve a compelling governmental interest, including preventing a child's physical endangerment or significant emotional impairment. *Paul E. v. Courtney F.*, 246 Ariz. 388, 394 ¶ 22 (2019).

**¶25** The court imposed the school restriction in conjunction with the award of sole legal decision-making authority to Father under A.R.S. § 25-401(3), including exclusive authority over educational decisions, and

as part of a broader protective framework grounded in prior findings that Mother abused Child and fabricated allegations of abuse. Consistent with that authority and those findings, the court directed that its order containing the school restriction be provided to Child's school, that Child not be released to Mother or her designees, and that Mother not be present on campus.

¶26    Here, the court determined Mother had abused Child and that her exercise of physical control over Child exposed Child to danger and injury. That is a compelling interest that justifies limiting Mother's custodial rights. *Paul E.*, 246 Ariz. at 394 ¶ 22. Because the court's findings show the compelling state interest in protecting Child's physical and emotional well-being, and evidence supports that finding, the court did not abuse its discretion or violate Mother's constitutional rights. *See id.* at 394–95, 397 ¶¶ 20, 22, 35.

## CONCLUSION

¶27    We affirm. Mother requests an award of attorneys' fees under A.R.S. § 25-324. Father prevailed, so we deny her request.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR