ATTORNEY FOR APPELLANT
Amy O. Carson
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Thomas J. Lantz
Seymour, Indiana

# In the
# Indiana Supreme Court

**FILED**

Jun 25 2013, 2:07 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 36S05-1206-DR-371

MICHAEL D. PERKINSON, JR.,

*Appellant (Petitioner below),*

v.

KAY CHAR PERKINSON,

*Appellee (Respondent below).*

Appeal from the Jackson Superior Court, No. 36D02-0803-DR-295
The Honorable Jon W. Webster, Special Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 36A05-1106-DR-322

**June 25, 2013**

**David, Justice.**

The concept of parents negotiating away parenting time as a means to eliminate the obligation to pay child support is repugnant and contrary to public policy. Attorneys should refuse to be a part of such discussion and should advise their clients that any such discussion is unacceptable. Here, an agreement to forego parenting time in exchange for relief from child support is declared void against public policy.

In addition, under the circumstances of this case, the trial court's prohibition against parenting time is not supported by the record. Trial courts are equipped with a plethora of options and a broad range of discretion to tailor each decision to the particular circumstances. However, their discretion is not absolute. We reverse the decision of the trial court which prohibited the father from exercising any parenting time with his child and provided no means by which he could earn parenting time.

## Facts and Procedural History

Michael D. Perkinson (Father) married Kay Char Perkinson (Mother) in October 2004. [Appellant's App. 56.] In August 2005, Mother gave birth to L.P. In September 2005, Father filed a petition for dissolution of the marriage. Father exercised parenting time with L.P. during the dissolution proceeding. Father also exercised parenting time with A.P., his child from a previous relationship.

A dissolution decree was entered in February 2006. It distributed marital assets and debts between Father and Mother and set out child support payments for L.P. Father and Mother entered into an agreement in which Father agreed to waive his parenting time rights in exchange for Mother assuming sole financial responsibility and waiving enforcement of Father's child support arrearage.

The agreement also set out that if Father sought parenting time in the future, "he shall be obligated to pay any support arrearage through the date of the approval" of the agreement by the trial court. The agreement was approved by the court in March 2006.

In February 2008, Father filed a verified petition for modification of parenting time, seeking to reestablish visitation with L.P. The trial court denied that petition in April 2008. Father filed a motion to correct error in May 2008, which was denied by the trial court in July 2008. In December 2010, Father filed a second verified petition for modification of parenting time. In March 2011, a hearing was conducted on the petition and the trial court again denied his petition. Father submitted a motion to correct error in March 2011 and in June 2011, the trial court denied the motion to correct error. The Court of Appeals reversed and remanded. We granted transfer.

2

**Discussion**

Father appeals from the trial court's denial of his motion to correct error. We review a trial court's denial of motion to correct error for an abuse of discretion, reversing only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law. Hawkins v. Cannon, 826 N.E.2d 658, 663 (Ind. Ct. App. 2005), trans. denied.

When the trial court enters findings sua sponte, the specific findings will not be set aside unless clearly erroneous. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. "A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it." Id. at 76–77. We neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 77. We consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id. We review the trial court's legal conclusions de novo. Mansfield v. McShurley, 911 N.E.2d 581, 589 (Ind. Ct. App. 2009).

This is ultimately a decision about parenting time, which requires us to "give foremost consideration to the best interests of the child." Marlow v. Marlow, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), trans. denied. Parenting time decisions are reviewed for an abuse of discretion. Id. Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous. Baxendale v. Raich, 878 N.E.2d 1252, 1257 (Ind. 2008). "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." Id. 1257–58.

The landmark Supreme Court case Troxel v. Granville, 530 U.S. 57 (2000), did an extensive historical analysis of parental rights in this country. "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Id. at 65. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166 (1944). "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established

3

beyond debate as an enduring American tradition." Wisconsin v. Yoder, 406 U.S. 205, 232 (1972).

## A. Parenting Time Rights Cannot Be Contracted Away

It is incomprehensible to this Court to imagine that either parent would ever stipulate to give up parenting time in lieu of not paying child support. It has long been established by this Court that "[a]ny agreement purporting to contract away these [child support] rights is directly contrary to this State's public policy of protecting the welfare of children." Straub v. B.M.T., 645 N.E.2d 597, 600 (Ind. 1994). See also Trent v. Trent, 829 N.E.2d 81, 86 (Ind. Ct. App. 2005). In Halum v. Halum, 492 N.E.2d 30, 33 (Ind. Ct. App. 1986), the Court of Appeals held that a "custodial parent may not bargain away the children's right to support." Such agreements between parents are void as a matter of public policy and our trial courts should be very careful not to allow the results which occurred in this case.

Even if it is not in a child's best interest to visit with a parent, it is still in that child's best interest to be financially supported by that parent. "It is well established that the right to child support lies exclusively with the child and that a custodial parent holds the support payments in trust for the benefit of the child." Sickels v. State, 982 N.E.2d 1010, 1013 (Ind. 2013) citing In re Hambright, 762 N.E.2d 98, 101 (Ind. 2002); Hicks v. Smith, 919 N.E.2d 1169, 1171 (Ind. Ct. App. 2010), trans. denied. Custodial parents who receive child support funds act as a trustee, and, "as a constructive trustee, [the custodial parent] may not contract away the benefits of the trust." Nill v. Martin, 686 N.E.2d 116, 118 (Ind. 1997). To do so would violate the fiduciary duty the custodial parent owes the child in relation to any child support funds.

Furthermore, the clause of the agreement purporting to obligate the Father to pay any support arrearage if he sought parenting time in the future acts to discourage the Father's future involvement with his child. As our Court of Appeals previously held, "[v]isitation rights and child support are separate issues, not to be comingled. A court cannot condition visitation upon the payment of child support if a custodial parent is not entitled to do so." Farmer v. Farmer, 735 N.E.2d 285, 288 (Ind. Ct. App. 2000).

4

"Indiana has long recognized that the right of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents," and thus a noncustodial parent is "generally entitled to reasonable visitation rights." Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006) (citing, inter alia, Ind. Code § 31-17-4-1), trans. denied. Indiana Code section 31-17-4-2 states that parenting time rights shall not be restricted unless there is a finding "that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." A trial court is empowered to specify and enforce the visitation rights of the non-custodial parent pursuant to Indiana Code.

The Court of Appeals first addressed the appropriate standard for denying parenting time to a noncustodial parent in Stewart v. Stewart, 521 N.E.2d 956 (Ind. Ct. App. 1988). In Stewart, the Court of Appeals reviewed the statutory language with respect to eliminating or restricting parenting time by a non-custodial parent.[1] The Court of Appeals wrote:

> Neither party suggests that the word "might" in the statute ("visitation by the parent *might* endanger the child's physical health or significantly impair his emotional development") requires only a mere *possibility* that the physical or mental health of the child would be endangered or impaired. In view of the nature of the parental right being cut off, such a construction would be an absurd one. Why would the legislature acknowledge the basic right of visitation of a non-custodial parent and then effectively abolish that right by permitting terminations supported only by speculative, possibility-type evidence. Thus, we have no hesitation in concluding that statute requires evidence establishing that visitation "would" (not "might") endanger or impair the physical or mental health of the child.

Stewart, 521 N.E.2d 960, n.3, trans. denied. This has been the test utilized by the trial courts since Stewart. One of the fundamental rules of statutory construction is that the "failure of the Legislature to change a statute after a line of decisions of a court of last resort giving the statute a certain construction, amounts to an acquiescence by the Legislature in the construction given by the court, and that such construction should not then be disregarded or lightly treated." Miller v.

---

[1] Ind. Code 31-1-11.5-24 (Supp. 1987) stated:
  (a) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the parent might endanger the child's physical health or significantly impair his emotional development.
  (b) The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development.

Mayberry, 506 N.E.2d 7, 11 (Ind. 1987) (superseded by statute on other grounds), Blanck v. Ind. Dep't of Corr., 829 N.E.2d 505 (Ind. 2005); Heffner v. White, 221 Ind. 315, 318–19, 47 N.E.2d 964, 965 (1943); Baker v. Compton, 247 Ind. 39, 211 N.E.2d 162 (1965); Thompson v. Mossburg, 193 Ind. 566, 139 N.E.307 (1923); Department of Revenue v. United States Steel Corp, 425 N.E.2d 659 (Ind. Ct. App. 1981); Terre Haute Savings Bank v. Indiana State Bank, 177 Ind. App. 690, 380 N.E.2d 1288 (1978); Economy Oil Corp. v. Indiana Department of State Revenue, 162 Ind. App. 658, 321 N.E.2d 215 (1974); C & G Potts & Co. v. Fortney, 117 Ind. App. 195, 69 N.E.2d 752 (1946).

In D.B. v. M.B.V., father filed a request for mid-week parenting time. 913 N.E.2d 1271, 1273 (Ind. Ct. App. 2009). After hearing testimony and evidence from numerous individuals, including a custody evaluator, guardian ad litem, and court appointed visitation supervisor, the trial court ordered that father have no parenting time with the children. Id. However, the Court of Appeals remanded and encouraged an order of supervised parenting time, noting the facts did not "approach the egregious circumstances in which we have previously found that parenting time may be terminated, such as when a parent sexually molests a child." Id. at 1275. The Court of Appeals also noted that "our parenting time statute does not provide for the elimination of parenting time because reunification counseling has proved unusually challenging." Id. The Court of Appeals held there may not be any restrictions unless the parenting time "would" endanger the child's physical health or emotional development. Id. at 1274.

In In re Paternity of P.B., 932 N.E.2d 712, 718 (Ind. Ct. App. 2010), the trial court denied mother's request to terminate father's parenting time. In that case, there were allegations that father held a gun to child's head and engaged in sexual gratification in child's presence. Id. at 715. The child's therapist and pediatrician testified in support of mother to the trial court but DCS unsubstantiated the allegations. The Court of Appeals held the "effect of Mother's motion to modify and terminate parenting time, if successful, is to essentially terminate parental rights while still maintaining the requirements of parental financial responsibility . . . and, worse yet, cutting a child off from the parent." Id. at 720. (internal quotations omitted) (emphasis omitted).

Furthermore in In re Paternity of W.C., the Court of Appeals stated that a court must "make a specific finding of physical endangerment or emotional impairment before placing a

6

restriction on the noncustodial parent's parenting time." 952 N.E.2d 810, 816 (Ind. Ct. App. 2011) (citations omitted). The party who is seeking "to restrict parenting time rights bears the burden of presenting evidence justifying such a restriction" by a preponderance of the evidence. Id. The trial court relied strictly on the custodial parent's journal to terminate the noncustodial parent's visitation rights. In reversing, the Court of Appeals cited the lack of "egregious circumstances" and mother's desire to be part of the child's life. Id. at 817.

As the Court of Appeals cases demonstrate, for twenty-five years, our courts have interpreted this statute to the higher threshold of the word "would" without any intervention from the legislature. Our neighboring states have equally similar language.

Indiana is not alone in recognizing a noncustodial parent's right of visitation with his or her own children. Ohio held "the right of visitation, albeit not absolute, should be denied only under extraordinary circumstances." Pettry v. Pettry, 20 Ohio App. 3d 350, 352, 486 N.E.2d 213, 215 (1984); accord Sholty v. Sherrill, 129 Ariz. 458, 632 P.2d 268 (1981); Devine v. Devine, 213 Cal. App. 2d 549, 29 Cal. Rptr. 132 (1963); In re Two Minor Children, 53 Del. (3 Storey) 565, 173 A.2d 876 (1961); Wilson v. Wilson, 73 Idaho 326, 252 P.2d 197 (1953); Willey v. Willey, 253 Iowa 1294, 115 N.W.2d 833 (1962); Radford v. Matczuk, 223 Md. 483, 164 A.2d 904 (1960); Syas v. Syas, 150 Neb. 533, 34 N.W.2d 884 (1948); Kresnicka v. Kresnicka, 42 A.D.2d 607, 345 N.Y.S.2d 118 (1973); Bussey v. Bussey, 148 Okla. 10, 296 P. 401 (1931); Venable v. Venable, 273 S.C. 96, 254 S.E.2d 309 (1979); Slade v. Dennis, 594 P.2d 898 (1979); Block v. Block, 15 Wis.2d 291, 112 N.W.2d 923 (1961). Illinois has held, "[t]here is a presumption [non-custodial parent] is entitled to reasonable visitation rights unless visitation would endanger seriously [child's] physical, mental, moral, or emotional health." In re J.W., 362 Ill. Dec. 111, 118 (Ill. App. Ct. 2012).

As if the forgoing rationales were not supportive enough to deny effect to the parenting agreement in question here, there is yet another reason to do so. The Indiana Parenting Time Guidelines explicitly declares that "[a] child has the right both to support *and parenting time . . .*" Ind. Parenting Time Guidelines § 1(E)(5) (emphasis added). This is not mere surplusage; Indiana has both long recognized the best interest of the child as being paramount in any custody consideration, see Buchanan v. Buchanan, 267 N.E.2d 155, 158 (Ind. 1971), and has a

legislatively-expressed presumption in favor of parenting time with the noncustodial parent. See Ind. Code § 31-17-4-2. The derivative of these dual declarations is that, not only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time from the noncustodial parent because it is presumed to be in the child's best interest. Just as allowing an agreement purporting to contract away a child's right to support must be held void, an agreement to contract away a child's right to parenting time, where the presumption that such parenting time is in the child's best interest has not been defeated, must also be held void as a matter of public policy. This is consistent with the idea expressed in Stanley v. Illinois where our Supreme Court held the parent-child relationship "undeniably warrants deference and, absent a powerful countervailing interest, protection." 405 U.S. 645, 651 (1972). Every child deserves better than to be treated as nothing more than a bargaining chip.

Finally, it is necessary for the trial court to make specific findings to support its parenting time order. In Farrell v. Littell, the trial court did not make specific findings that visitation would endanger the child's physical health or well-being or significantly impair the child's emotional development and absent such a finding, the lower court did not have the authority to restrict father's parenting time with the child. 790 N.E.2d 612, 618 (Ind. Ct. App. 2003). In Duncan v. Duncan, the trial court made specific findings in denying father's request to establish parenting time. 843 N.E.2d 966, 968 (Ind. Ct. App. 2006), trans. denied. In Duncan, the father was arrested and charged with molesting his adopted daughter over a ten year period. Those are specific facts, and no such facts are present in the current case.

We agree with our brethren at the Court of Appeals and with the majority of the states. Extraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child. If the trial court finds such extraordinary circumstances do exist, then the trial court shall make specific findings regarding its conclusion that parenting time would endanger the child's physical health or significantly impair the child's emotional development. Therefore, the focus now shifts to whether there were specific findings of egregious or extraordinary circumstances that support the court's denial of Father's parenting time.

8

## B. Application to this Case

Some of the greatest challenges a trial court will ever face are challenges in parenting time cases. This is one of those cases. For two years, Father was not in contact with L.P. However, for the past five years, the record is clear that Father has attempted to reenter L.P.'s life. He has twice petitioned the court for parenting time. He is currently raising a child younger than L.P. and has parenting time with his first born. These facts do support Father's position that he no longer wants to remain disconnected from L.P.

Father believed that he and Mother agreed that he could reenter L.P.'s life at any time by paying child support arrearages. The record reflects Father was willing to pay the arrearages. Father provided the trial court with documentation of his efforts to maintain contact with L.P., including requests to Mother to visit L.P. Father has relocated, remarried, and had a third child. Father exercises parenting time with his older child from 6:00 p.m. on Friday until 8:00 a.m. on Tuesday. Father's younger child lives with him and his wife. There is no evidence in the record that Father has a criminal record, or any abuse charges on any children. Mother argues that Father was verbally abusive to her and neglected L.P. as a child.

The trial court in the present case makes a finding that parenting time "would not be in the child's best interest and would create significant emotional harm to her" but provides insufficient facts to support its finding other than its footnote asking "How do you explain to a six (6) year old that her Father exchanged time with her for money?" As horrific as that rhetorical question is, Mother agreed to it. And Mother's attorney prepared the documentation.

In this case, Mother did not offer any DCS reports, therapist reports, or expert testimony to show that parenting time between Father and L.P. would not be in the child's best interest. We understand Mother went through significant emotional turmoil in being a single mother while putting herself through college and testified she felt abandoned by Father. However, again, Mother agreed to this arrangement.

The only evidence before the trial court regarding any endangerment to the child was the testimony of the Mother. Again, there was no evidence by a guardian ad litem or therapist. The evidence presented by Mother in this case is weaker than the lineage of cases under Indiana case

9

law dealing with this issue. While under the right circumstances, one parent's testimony alone could be sufficient, here Mother's testimony was only that Father was verbally abusive to Mother and Father's oldest child in 2005, and that he threatened to destroy the relationship between Mother and L.P. While we find these facts problematic for Father, we find these facts an insufficient basis to deny parenting time to Father. There is no evidence to support Mother's belief that it would not be in the best interests of L.P. to spend time with her Father.

The trial court has a host of tools at its disposal. It could order phased in professionally guided supervised visitation at Father's expense. The trial court could require the testimony of a child psychiatrist or child psychologist to assist it in determining how best to structure reunification. Or perhaps the testimony of an expert would support the fact that even the introduction of parenting time would endanger the child's well being. The trial court could even appoint a GAL or CASA to investigate and make recommendations to the trial court. These are but a few of the many courses of action the trial court could take, when, as the situation here, the facts do not support the child would be endangered by parenting time with his Father.

## Conclusion

The decision of the trial court is reversed and this case is remanded.

Dickson, C.J., and Massa and Rush, J.J., concur.

Rucker, J., concurs in result.

10