## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 20 2016, 5:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Jeffry G. Price
Peru, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Janel Manriquez, <br> *Appellant-Defendant,* <br><br> v. <br><br> Derek Lee Manriquez, <br> *Appellee-Plaintiff* | January 20, 2016 <br><br> Court of Appeals Case No. 52A04-1503-DR-118 <br><br> Appeal from the Miami Superior Court II <br><br> The Honorable George A. Hopkins, Special Judge <br><br> Trial Court Cause No. 52D02-1309-DR-270 |

**Altice, Judge.**

### Case Summary

[1] Janel Manriquez (Mother) appeals the trial court's final decree of dissolution of her marriage to Derek Lee Manriquez (Father). Although she sets out five issues for review, her arguments boil down to two issues. First, did the trial

court err in failing to divide Father's 2013 tax refund between the parties? Second, did the trial court abuse its discretion in the determination of parenting time?

[2] We affirm.

## Facts & Procedural History

[3] Mother and Father were married on December 30, 2008. They have two children together, J.M. and B.M., born July 2008 and October 2011 respectively. The parties separated in August 2013 and Mother filed for divorce on September 10, 2013, a little more than a year after the family returned from living in Texas.

[4] Since July 2012, Father has worked night shifts at the Indiana Department of Correction. He works from about 6:00 p.m. until 6:00 a.m. on seven nights over a two-week period. The first week he works on Monday, Tuesday, Friday, Saturday, and Sunday. He then works Wednesday and Thursday the next week. In light of Father's non-traditional work schedule and Mother's unemployment, the parties shared custody of the children after their separation. They agreed that Mother would care for the children in her home on the days Father worked, and Father would care for them on the remaining days in his parents' home, where he was temporarily living to save money. This arrangement resulted in the parties having an equal amount of parenting time during a two-week period.

[5]     Following a provisional hearing on February 10, 2014, the trial court granted legal custody of the children to Father and continued the parties' arrangement regarding shared physical custody. This was despite Mother's request for custody of the children with Father having parenting time on alternating weekends. The court found that while the shared arrangement was "unwieldy" it was "satisfactory and justifie[d] a deviation from the Specific Parenting Time Provisions (Section II) of the Indiana Parenting Time Guidelines". *Appellant's Appendix* at 20. Additionally, the court ordered Father to pay $27 per week in child support.

[6]     The final hearing was held on November 13 and December 8, 2014. Both parties sought legal and physical custody of the children. J.M. was in first grade at the time of the final hearing. Mother testified that if she obtained custody of the children, J.M.'s school would change because she lived in a different county.

[7]     With respect to custody, Mother testified that the existing arrangement was not in the best interest of the children. She noted several disagreements between her and Father that had made the children upset. She indicated that this had been the atmosphere and relationship between the parties since the provisional order. Further, Mother's proposed child support worksheet was calculated based on Father exercising parenting time pursuant to the Indiana Parenting Time Guidelines (the IPTG).

[8] The record indicates that Mother became employed full time during the provisional period. Since March 2014, she has worked Monday through Friday from 8:30 a.m. to 5:30 p.m. Father's testimony indicated that the parties modified the shared-custody arrangement once Mother began working. In vague terms, Father testified that after she became employed, Mother would care for the children while he was working "whenever she was home". *Transcript* at 117. Father indicated that if he had custody of the children, he would propose that the "sharing of [the] kids…stay like that". *Id*.

[9] On December 15, 2014, the trial court issued its final decree of dissolution in which the court divided the parties' marital estate and determined child custody and support. Relevant to this appeal, the court split a $1015 tax refund between the parties, awarded physical and legal custody of the children to Father, ordered Mother to pay child support of $59 per week, and indicated that the IPTG applied.

[10] Mother filed a motion to correct error on January 7, 2015, arguing among other things that the court failed to include Father's 2013 tax refund in the marital estate. Shortly thereafter, she filed an amended motion, in which she added a claim that the trial court erred "by failing to incorporate into its ruling the agreement of the parties to continue the shared custody arrangement whereby both parties testified and agreed that the Mother should have the children while the Father worked his night shift and vice versa." *Appellant's Appendix* at 24. Father filed a response to the amended motion to correct error, but Mother did not include this document in her appendix.

The trial court did not rule upon the motion to correct error or set it for hearing within forty-five days. Accordingly, the motion was deemed denied on or about February 21, 2015. Mother timely appealed.

## Discussion & Decision

### 1. Division of Marital Property

Mother initially contends that the trial court erred by failing to divide Father's 2013 tax refund. She directs us to the provisional hearing and order referencing the parties' 2013 tax returns. Specifically, at the provisional hearing, Father testified that he had filed his 2013 tax return and expected a refund of "approximately 42 hundred." *Supplemental Transcript* at 39. Accordingly, the trial court provisionally ordered:

> 11. The father has filed tax returns for tax year 2013. Upon receipt of any refund(s) the father shall deliver the refund(s) to his attorney who shall hold the same in trust until further order of the court.
>
> In the event the mother receives any tax refund(s) for tax year 2013, she shall deliver the refund(s) to her attorney who shall hold the same in trust until further order of the court.

*Appellant's Appendix* at 20.[1]

---

[1] The provisional order terminated once the final decree was entered. Ind. Code § 31-15-4-14.

[13] Mother fails to acknowledge that no evidence was presented at the final hearing regarding Father's 2013 tax return. Indeed, her own exhibit listing assets and debts of the marriage generally indicated "Tax Refund" with a value of $1,015. *Volume of Exhibits* at Petitioner's Exhibit 1. Her testimony did not further enlighten the trial court regarding Father's 2013 tax return. She testified that the parties had already divided a tax refund from 2012 in the amount of $2500. She then acknowledged that her attorney "ha[d] the 2013…tax refund of a thousand fifteen in [his] trust account". *Transcript* at 20. No mention was made of a separate tax refund in the amount of $4200.

[14] In its order, the trial court provided: "The parties received a tax refund in the amount of $1,015.00. Each party shall receive one half of the refund except the amount for mother shall be offset by the amount she owes the father for the unpaid medical bills ($236.40)." *Appellant's Appendix* at 16. This was clearly supported by the evidence presented at the final hearing. Further, even if we were to assume that Father's 2013 tax refund was erroneously excluded from the marital estate, Mother invited that error. "The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct." *Balicki v. Balicki*, 837 N.E.2d 532, 541 (Ind. Ct. App. 2005), *trans. denied*. *See also Galloway v. Galloway*, 855 N.E.2d 302, 306 (Ind. Ct. App. 2006) (the burden of producing evidence as to the value of marital property rests squarely on the shoulders of the parties and their attorneys). Having failed to introduce evidence of the value or existence of a

separate tax refund, Mother is estopped from challenging the trial court's distribution.  *See Galloway*, 855 N.E.2d at 306.

## 2.  Parenting Time

Mother does not challenge the trial court's award of legal and physical custody of the children to Father.  She contends only that the trial court abused its discretion by failing to order parenting time beyond the minimum set out in the IPTG.  Specifically, Mother argues that the trial court should have continued the parties' arrangement in which she would have the children overnights when Father worked his night shifts.

Decisions about parenting time require courts to give "foremost consideration" to the best interest of the children.  *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).  We review such decisions for an abuse of discretion.  *Id*.  "Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous."  *Id*.  We will not substitute our judgment if any evidence or legitimate inferences support the trial court's judgment.  *Id*. *See also Gomez v. Gomez*, 887 N.E.2d 977, 983 (Ind. Ct. App. 2008) ("on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal").

The evidence reveals that upon their separation Mother and Father implemented a unique arrangement to provide care for the children while Father worked his night shifts.  This arrangement resulted in the parties

effectively having the children an equal amount of time over a two-week period. By the time of the provisional hearing, Mother was no longer in favor of this arrangement and sought primary custody with Father having parenting time pursuant to the IPTG. The trial court, however, chose to provisionally adopt the parties' original arrangement, which the court found "unwieldy" but "satisfactory". *Appellant's Appendix* at 20.

[18] Once Mother began working in March 2014, the parties apparently modified the arrangement. Although not specifically defined at trial, it can be reasonably inferred that the modified arrangement resulted in some reduction in Mother's time with the children due to her work schedule. Mother testified at the final hearing that the custody arrangement was not working in the best interest of the children, and she testified regarding disagreements between she and Father that had negatively affected the children. As a result, Mother asked the trial court for custody of the children and submitted a child support worksheet indicating that Father should be credited with ninety-eight overnights per year, which equates to parenting time pursuant to the IPTG.

[19] In its final order, the trial court summarily granted custody to Father and ordered that the parties apply the IPTG. Mother argues on appeal that the trial court abused its discretion because it "ignored [Mother] and [Father's] agreed joint parenting plan" without explanation.[2] *Appellant's Brief* at 12. On the

---

[2] To the extent Mother asserts that the trial court erred by not entering written findings regarding the best interest of the children, we observe that neither party requested that the court enter specific findings. *See*

contrary, the record firmly establishes that at the provisional hearing and the final hearing, Mother was opposed to the shared parenting plan originally implemented by the parties. She expressly testified at the final hearing that the plan was no longer in the children's best interest. Accordingly, no agreed parenting plan existed between the parties at the time of the final hearing.[3] Under the circumstances, we do not find that the trial court abused its discretion by applying the IPTG rather than continuing the provisional arrangement.

[20]   Judgment affirmed.

Robb, J., and Barnes, J., concur.

---

*Hegerfeld v. Hegerfeld*, 555 N.E.2d 853, 856 (Ind. Ct. App. 1990) ("[n]either [party] requested specific findings; therefore, it was unnecessary for the trial court to make specific findings that the custody award was in the children's best interest").

[3] The IPTG certainly encourage parenting plans created by the parties. Section II(A) provides that if such an agreement is reached, "the parenting plan shall be reduced to writing, signed by both parties, and filed for approval by the court in order to be enforceable."