## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2018, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Tula Kavadias
Kavadias & Associates, PC
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Adam J. Sedia
Hoeppner, Wagner & Evans, LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Marriage of:

Maher N. Daklalla,

*Appellant-Petitioner,*

v.

Rana E. Dahdal,
f/k/a Rana E. Daklalla,

*Appellee-Respondent.*

February 13, 2018

Court of Appeals Case No.
45A03-1708-DR-1947

Appeal from the Lake Superior Court

The Honorable Elizabeth F. Tavitas, Judge

Trial Court Cause No.
45D03-1305-DR-431

**Najam, Judge.**

## Statement of the Case

[1]     Maher Daklalla ("Father") appeals the trial court's order modifying Rana Dahdal's ("Mother") parenting time with the parties' child, L.D. ("Child"), and

finding Father in contempt of court. Father presents the following dispositive issues for our review:

1. Whether the trial court improperly shifted the burden of proof to Father on Mother's petition to modify parenting time.

2. Whether the trial court abused its discretion when it found Father in contempt of court.

3. Whether the trial court erred when it granted Mother's motion for a permanent injunction enjoining Father from interfering with Mother's parenting time with Child.

We affirm in part and reverse in part.

## Facts and Procedural History

Father and Mother hail from Syria, where they were married in 2008. They later lived together in the United States, where, in 2010, Mother gave birth to Child. During the Spring of 2013, Father alleged that Mother had threatened to kill Child and had stabbed Father. Accordingly, on May 22, Father filed a petition for dissolution of marriage, and he obtained an order of protection against Mother, who moved out of the family home. Pursuant to the order of protection, Mother's visitations with Child were to be supervised. Judith Haney, a supervised visitation monitor, oversaw Mother's visitations with Child at The Children's Tree House in Crown Point.

On April 13, 2015, the trial court entered the dissolution decree, which provided in relevant part that Father had custody of Child, Mother was to pay

child support to Father, and Mother's supervised visitations with Child would continue to take place at The Children's Tree House. The decree provided further that, pursuant to the parties' agreement, "Rebecca Wit[zke], MSW, shall serve in the capacity of reunification therapist. Father shall participate in the sessions as determined by the therapist." Appellant's App. Vol. II at 21.

[5] However, before she began attending the supervised visits between Mother and Child, Witzke informed the parties' attorneys that she would *not* be acting as a reunification therapist. Instead, she would "sit in [on] the visitation just to see if there was anything that was restricting it from being successful and that [she] could intervene with a parent if necessary." Tr. at 80. Witzke attended thirteen visitations between Mother and Child, which continued to be supervised by Haney. Then, in March 2016, Father's attorney notified Witzke that Father was rescinding his consent for her participation in the supervised visitations between Mother and Child. Also in March 2016, Mother became a United States citizen. And in April, without notifying either Father or the trial court of her travel plans, Mother went to Italy for one month to visit with family.

[6] On June 22, 2016, Father filed with the trial court a motion to change the location of Mother's supervised visits and to terminate reunification therapy. In that motion, Father averred that The Children's Tree House had ceased operations and that reunification therapy with Witzke should be terminated for "lack of progress." Appellant's App. Vol. II at 36. In response, Mother filed a petition to modify parenting time, a rule to show cause why Father should not be found in contempt of court, and a petition for an injunction "enjoining

Father from interfering with Mother's parenting time" with Child. *Id.* at 42. Mother sought "unsupervised and unfettered parenting time" with Child. *Id.* at 40.

On May 10 and May 30, 2017, the trial court held a consolidated hearing on all pending motions. The trial court took the matters under advisement and, on July 25, the court granted Mother's motion for modification of parenting time and found Father in contempt of court. The trial court found and concluded in relevant part as follows:

> 11. Father testified that Mother cannot satisfy his concerns that Mother will flee to Syria with the child. Father claims that Mother, in the past, has threatened to take the child to Syria. Additionally, Father fears that Mother will flee with the child to Syria with the help of Mother's family who work for the Syrian government.

> 12. Since the Dissolution Decree, Mother has gained better understanding of the English language; she has a job, a driver's license, and, most significantly, has become a U.S. citizen.

> 13. Mother has diligently visited with her daughter despite the many obstacles.

> 14. Mother has diligently phoned her daughter nearly daily, which the Court finds Father has thwarted.

> 15. Father has also thwarted visitation by objecting to Ms. Wit[z]ke's involvement.

> 16. Mother and Father are unable to communicate with each other.

17.     No evidence was presented that Mother poses any threat of physical or emotional harm to the child.

\* \* \*

ANALYSIS AND CONCLUSIONS OF LAW

1.     The Court finds that no evidence was presented that Mother is a genuine flight risk; and no evidence was presented that Mother poses a threat to the physical or emotional well-being of the child.

2.     The Court finds that Father willfully terminated the reunification therapy and interfered with Mother's parenting time with the Child.

3.     The Court finds a Guardian ad Litem should be appointed to represent the best interests of the child.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.     The Court grants in part and denies in part Father's Motion to Change Location for Mother's Supervised Visits and for Termination of Reunification Therapy.

\* \* \*

4.     The Court grants Mother's Petition to Modify Parenting Time Order.

5.     [The Guardian ad Litem] shall monitor four (4) visitations between Mother and the child one hour per week. After four sessions, if the Guardian ad Litem has no objections, Mother shall begin unsupervised parenting time with the child to be phased in as follows:

Week 5:     2 hours. . . .
Week 6:     4 hours. . . .
Week 7:     8 hours. . . .
Week 8:     [16 hours]
Week 9:     Saturday 6:00 p.m. until Sunday 6:00 p.m.
Week 10:    Friday 6:00 p.m. until Sunday 6:00 p.m.

Thereafter, the Indiana Parenting Time Guidelines shall be followed.

6.     The Court grants the Petition for Rule to Show Cause. Father is in willful contempt of Court for failure to abide by the Order for reunification therapy.

7.     As sanctions, the Court orders Father to pay Mother's attorney fees for litigation of the contempt proceedings. Attorney O'Donnell shall file, within fourteen (14) days, an Attorney Fee Affidavit.

8.     Father may purge himself of contempt by abiding by all Court Orders regarding parenting time.

9.     The Court grants Mother a permanent injunction enjoining Father from interfering with Mother's parenting time with the parties' minor child.

*Id.* at 21-24. This appeal ensued.

# Discussion and Decision

## *Issue One: Burden of Proof*

[8]   Indiana Code Section 31-17-4-2 provides that the court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's

parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development. *Id.* Parenting time decisions are reviewed for an abuse of discretion. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013). Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous. *Id.*

[9]    Father contends that "[i]t is clear from the wording of the order that the trial court improperly shifted to the Father the burden of proof on the Mother's petition." Appellant's Br. at 18-19. To support this contention, Father directs us to the trial court's failure to make a finding on Child's best interests and the court's finding that "[n]o evidence was presented that Mother poses any threat of physical or emotional harm to the child." Appellant's App. Vol. II at 22. In essence, Father asserts that the court's finding implies that there was no evidence *presented by Father* that Mother poses any threat of physical or emotional harm to Child, which, in turn, suggests that the court thought that Father was required to present such evidence. We cannot agree with Father's contention on this issue.

[10]   First, the trial court entered findings and conclusions *sua sponte*, and it was not required to make a specific finding on Child's best interests. *See* I.C. § 31-17-4-2. Second, Mother presented evidence that she did not present any threat of physical or emotional harm to Child. The trial court found Mother's testimony to be credible. In addition, Witzke testified that Mother's visitations with Child need not be supervised. Indeed, Father concedes that the evidence supports the

trial court's findings on the modification of parenting time, and he "does not contend that the findings do not support the judgment." Reply Br. at 16.

[11] We hold that Father's contention that the trial court improperly shifted the burden of proof to Father on Mother's petition to modify is pure speculation. It is well settled that we presume that the trial court, as the factfinder, correctly applied and followed the law. *Bordenkecher v. State*, 562 N.E.2d 49, 51 (Ind. Ct. App. 1990), *trans. denied*. Father has not carried his burden on appeal to show that the trial court erred on this issue.

### *Issue Two: Contempt*

[12] Father next contends that the trial court abused its discretion when it found him in contempt of court. In order to be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Id.* Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. *Id.* The determination of whether a party is in contempt of court is a matter left to the trial court's discretion. *Id.* We will reverse a trial court's finding of contempt only where there is no evidence or inferences from the record to support it. *Id.* As with other sufficiency matters, we will neither reweigh the evidence nor judge

witness credibility. *Id.* All orders contained within a dissolution of marriage decree may be enforced by contempt. Ind. Code § 31-15-7-10 (2018).

[13] Here, the dissolution decree provided in relevant part that Witzke "shall serve in the capacity of reunification therapist" and that "Father shall participate in the sessions as determined by the therapist." Appellant's App. Vol. II at 21. In support of its conclusion that Father "is in willful contempt of Court for failure to abide by the Order for reunification therapy," the trial court found that Father had "thwarted visitation by objecting to Ms. Wit[z]ke's involvement." *Id.* at 22-23. But the undisputed evidence shows that, at the outset, Witzke informed counsel for both Father and Mother that she would not be conducting reunification therapy. And at the factfinding hearing, Witzke testified that she did not serve as a reunification therapist. Because there was no reunification therapy occurring, Father cannot be found to have violated the court order mandating reunification therapy when he terminated Witzke's participation in Mother's supervised visitation with Child.

[14] Further, Haney conducted all 190 sessions of Mother's supervised visitation with Child, which included thirteen sessions attended by Witzke. Father did not interfere with Haney's participation in those visitations. Indeed, Haney testified that Mother's supervised visitations with Child could have continued after Father told Witzke to stop participating. But Mother left for Italy for one month and, shortly thereafter, The Children's Tree House ceased operations. In June, Father moved the trial court to designate a new location for Mother's

supervised visitations. The evidence does not support the trial court's finding that Father thwarted Mother's visitations with Child.

[15] Still, Mother contends that the trial court was justified in finding Father in contempt of court based on his conduct in thwarting Mother's attempts to communicate with Child by telephone. But the trial court explicitly based its contempt finding on Father's "failure to abide by the Order for reunification therapy." *Id.* at 23. Thus, Father's interference with Mother's telephonic communication with Child cannot support the trial court's contempt finding. We reverse the trial court's contempt finding and, accordingly, reverse the court's award of attorney's fees as sanctions therefor.

### Issue Three: Injunction

[16] Finally, Father contends that the trial court erred when it entered an injunction enjoining him from interfering with Mother's parenting time with Child. Father points out that, while Mother petitioned for the injunction, neither party presented evidence or argument on the issue at the factfinding hearing. The grant or denial of a request for an injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 171-72 (Ind. Ct. App. 2008).

[17] Mother moved the trial court for an injunction under Indiana Code Section 31-17-4-4, which provides as follows:

> A noncustodial parent who:

(1) has been granted parenting time rights with a child who lives with the custodial parent;

(2) *regularly pays support ordered by a court for the child*; and

(3) is barred by a custodial parent from exercising parenting time rights ordered for the noncustodial parent and the child;

may file, in the court that has jurisdiction over the dissolution of marriage, an application for an injunction against the custodial parent under Rule 65 of the Indiana Rules of Trial Procedure.

(Emphasis added.) As Father correctly points out, Mother did not present evidence to show that she regularly pays her child support obligation under the dissolution decree. Accordingly, the trial court abused its discretion when it entered the injunction against Father.[1]

## *Conclusion*

[18] The trial court did not shift the burden of proof to Father on Mother's petition to modify parenting time. The trial court abused its discretion when it found Father in contempt of the dissolution decree. And the trial court abused its discretion when it entered an injunction against Father.

[19] Affirmed in part and reversed in part.

---

[1] Mother's contention that Father waived his argument on this issue for failure to raise it to the trial court is without merit.

Mathias, J., and Barnes, J., concur.