## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 14 2020, 6:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott A. Norrick
Attorney at Law, P.C.
Anderson, Indiana

ATTORNEY FOR APPELLEE

Paul J. Watts
Watts Law Office, P.C.
Spencer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Janie L. Givens,
*Appellant*,

v.

Troy Givens,
*Appellee*.

February 14, 2020

Court of Appeals Case No.
19A-DR-2309

Appeal from the Owen Circuit Court

The Honorable John M. Plummer, III, Special Judge

Trial Court Cause No.
60C02-1508-DR-103

**Brown, Judge.**

[1] Janie L. Givens ("Mother") appeals from the trial court's July 18, 2019 order on parenting time and contempt. We affirm.

## *Facts and Procedural History*

[2] Mother and Troy Givens ("Father") were married in 1987 and have six children. In August 2015, Mother filed a petition for dissolution of marriage at which time two of the children were minors. The two minor children had been adopted by Father and Mother.[1] In January 2016, the court entered a decree dissolving the parties' marriage incorporating their settlement agreement. The settlement agreement provided Mother would retain the marital residence and divided the parties' personal property and debts. In part, the agreement specified Mother was responsible for debt on a certain Capital One credit card. The agreement provided that the parties share joint legal custody of the minor children, Mother have primary physical custody, and Father pay child support and have a minimum of parenting time afforded by the Indiana Parenting Time Guidelines. The agreement also provided:

> Each of the parties agrees that in undertaking to pay certain obligations herein, that the said party shall hold the other party harmless for principal, interest, court costs and attorney's fees together with any judgment rendered against the innocent party by virtue of the party obligated to pay, failing to fulfill that obligation, and an action being brought by the innocent party.

---

[1] Charlotte Church, an assessing case manager for the Department of Child Services, testified the minor children "are of no blood relation to [Mother]" and are Father's biological grandchildren. Transcript Volume II at 21.

Appellant's Appendix Volume II at 50.

[3]     In May 2018, Father filed a Petition to Modify requesting custody of the minor children subject to Mother's supervised and restricted parenting time because child in need of services ("CHINS") actions had been filed. On July 10, 2018, the parties entered into a Joint Modification Agreement & Order (the "Joint Agreement"), signed by the parties and their attorneys, and on July 13, 2018, the court issued an order approving the Joint Agreement. The parties agreed Father would have sole legal and primary physical custody of the minor children. The Joint Agreement further provided:

> Parenting Time by [Mother] with the minor children shall only occur in a reasonable public arena, at reasonable and seasonable times as the parties may agree, and [Mother] shall not allow the children to have any contact with [T.], boyfriend of Mother, or [J.], Father of [Mother], subject to further order of this court. [Mother's] Parenting Time shall not be unreasonably withheld.

*Id*. at 98. In January 2019, the court issued an order stating Mother was unable to maintain mortgage payments on the marital residence which was about seven months in arrears and a foreclosure action had been filed, ordered Father be granted immediate possession to list the residence for sale, and gave Mother thirty days to vacate the premises.

[4]     On May 2, 2019, Mother filed a motion for emergency order allowing parenting time arguing that, since she moved from the family home on February 25, 2019, Father had denied her all visitations based solely on Father not having her current address, her current address is irrelevant to visitation because the Joint

Agreement directed all visits to occur in a public place, and Father endeavored to alienate the children from her. On May 16, 2019, Father filed a Motion for Rule to Show Cause alleging Mother was ordered to pay the debt on the Capital One credit card and she had not made any payments since January 5, 2019, and he requested attorney fees.

On June 21, 2019, the court held a hearing. Mother testified that she informed Father there was no reason he needed her physical address and that he would not permit visitation. She stated "I'd like to have the visitation modified as far as when we did the visitation a year ago it was in a public place" and "since then [Father] argues about a park being a public place, he puts stipulations on - and we can only see each other for an hour, I mean none of that was in the agreement, and he tries to control everything about visitation." Transcript Volume II at 5. On cross-examination, Mother provided a mailing address, stated it was her father's address, and when asked if "that is the same [J.] who these children have alleged molested them," replied "[i]t is the same, there have been allegations and no arrests have ever been made, and like I said it's my mailing address, I don't reside there." *Id*. at 7-8. Mother indicated she was living in Linton. The court noted that a statute, effective July 1, 2019, absolutely required her to provide her home address.[2] The court stated "I am

---

[2] Ind. Code § 31-17-2.2-0.5 (eff. July 1, 2019) provides:

    Except as provided in section 4 of this chapter, an individual who has or is seeking:

        (1) custody of a child;

ordering you right now, here in open court to provide that information, and if you fail to do so I will take that into consideration in my order" and asked "[a]re you refusing to answer the question," and Mother replied "Yes." *Id.* at 9-10. Mother indicated she was not living with T., they never lived together, and he occasionally spent the night at her house. She indicated that one of her children raised a molestation allegation against T. which was the subject of a CHINS action, it was just an allegation, and she entered the Joint Agreement which provided the children were not allowed contact with T. or J. She indicated that she did not call one of her children a liar. When asked how she felt about having visitation under the supervision of the children's therapist, she

---

        (2) parenting time with a child; or

        (3) grandparent's visitation under IC 31-17-5;

shall at all times keep all other individuals who have or are seeking rights with the child (as described in subdivisions (1) through (3)) advised of the individual's home address and all of the individual's telephone numbers and electronic mail addresses. Information required by this section must be provided in writing, including electronically, to each individual entitled to the information.

Ind. Code § 31-17-2.2-4 provides:

If a court finds that disclosure of the information required under IC 31-14-13-10.2 or section 0.5 or 3 of this chapter creates a significant risk of substantial harm to the individual required to provide the disclosure or to the child, the court may order:

        (1) that the address, the telephone number, or other identifying information of the individual or child not be shared with other individuals or disclosed in the pleadings, other documents filed in the proceeding, or the final order;

        (2) that the information required under section 3 of this chapter be maintained by the clerk of the court in a secure location separate from the pending case file;

        (3) that the notice requirements under this chapter be waived to the extent necessary to protect the individual or child from significant risk of substantial harm; or

        (4) other remedial action that the court considers necessary to facilitate the legitimate needs of the parties and the best interest of the child.

replied that she would not agree to any supervised visitation. She testified she was unable to pay the credit card debt, her check was $500 a week, $200 came out for child support, she did not pay rent but had utilities, and her last paycheck was for $582.

[6] Father presented testimony of Charlotte Church, an assessing case manager for the Department of Child Services ("DCS"). Church testified DCS received a report that one of the children was sexually abused by Mother's boyfriend, T. She indicated that she called Mother, Mother was upset and called the child a liar multiple times, it was evident Mother's contact with the child was likely to alter the child's statement, and the child was interviewed during which she disclosed allegations regarding J. According to Church, the CHINS case was dismissed on the basis of a custody agreement, and the children identified T. as a resident of Mother's home. She indicated the CHINS case was dismissed based on Father's assurance that the children were protected and Mother would not be given the opportunity to take them around T. or J. She indicated J. had a substantial criminal history. She further indicated that DCS substantiated sexual abuse by T. and J. and neglect by Mother. On cross-examination by Mother, Church indicated the children later disclosed they were told by Mother to lie. Mother asked "what were they supposed to lie about," Church replied "[b]eing physically abused, punched on the head and pulled by the hair," Mother stated "[t]hose weren't the allegations that they were investigating so why would someone, I mean - ," and Church stated "[t]hey were." *Id.* at 24. Mother asked "[t]he allegations were they didn't have food in the home, they

didn't have clothes, one of the boys had hit [one of the children] with a hammer, I mean all that stuff," and Church replied "[a]nd drug use, yes, correct, all of those things, including physical abuse because I specifically remember talking to you about the physical abuse." *Id*. Mother asked "I also have a lawsuit against you and DCS, correct," and Church responded affirmatively. *Id*.

[7] Father testified that Mother's last payment on the Capital One credit card had been January 5th. He testified that he did not trust Mother or her father, and when asked if he had concerns that Mother would take the children, Father stated "[t]hey'll hide them out." *Id*. at 26. Father testified that Mother did not need to be alone questioning the children. He indicated that, when he listened to Mother on the phone with one of the children, the child told Mother it hurt when she hit her with a clothes hanger, to which Mother replied the child was a liar because it was a plastic clothes hanger, and at some point she also called the child a b---- or a lying b----. He indicated it concerned him that Mother moved and refused to provide an address and, when asked why, stated "[b]ecause for one the lawsuit, the type of actions that – her temper is out of this world and everything and I don't trust her." *Id*. According to Father, he told Mother there would not be further visits until she complied with the law and one of the children refused to talk to Mother and is scared of her. When asked, "[a]s of this point, because of all that's going on, would you ask the Court to limit her, or allow you to limit her parenting time to therapeutic setting only until a counselor says it's safe to let her have unsupervised visits," Father answered "I

would as long as it didn't have anything to do with the lawsuit." *Id.* at 27. He requested an order that Mother reimburse him for the part of his attorney fees related to the contempt on the Capital One credit card.

[8] On July 18, 2019, the court issued an order finding Mother refused to disclose her new physical address to Father or the court, even after ordered to do so in open court, and this was a significant concern to the court given it must make decisions consistent with the best interests of the minor children. It found that Mother had lost credibility with the court by refusing to follow its order to disclose her address, and it had reasonable concerns that she will refuse to follow other court orders including those pertaining to her parenting time. The court found Mother testified her mailing address was her father's house. It found Father presented credible evidence that one of the minor children reported Mother had been residing with T., who allegedly molested one of the children, and DCS had been made aware of the allegation. It found Father presented credible evidence that the children's maternal grandfather had a lengthy criminal history, including molesting at least one of the minor children, and the children have reported to Father and to DCS that Mother told them to lie to DCS which Mother denies. It found Father presented evidence that Mother called one of the minor children "a lying b----." Appellant's Appendix Volume II at 39. The court found "a real risk exists that Mother will allow the minor children to be around men they should not be around for safety reasons." *Id.* It further found the Parenting Time Guidelines are inapplicable at this time because it reasonably believes Mother is likely to endanger or fail to ensure the

protection of the children's physical health or safety which may impair their emotional development. The court ordered: "Mother's parenting time with the minor children of the parties shall be and hereby is limited and restricted to having only supervised parenting time with the minor children under the therapeutic supervision and treatment of a licensed child or family therapist." *Id.*

[9] As to contempt, the court found Father presented sufficient evidence that Mother had willfully disobeyed its order by failing to pay the debt due and owing on the Capital One credit card and had not made any payments on the card since January 5, 2019. It rejected Mother's testimony that she was unable to pay and found her net pay for the previous two-week pay period was $582 and she did not have a rent or house payment. It found Mother in contempt, ordered her to pay the debt due and owing on the credit card, and indicated sanctions were withheld for ninety days to give her time to cure. The court found Father retained counsel to prosecute the contempt action and ordered Mother to reimburse Father $1,005 for the attorney fees he incurred to prosecute the contempt issue. Mother filed a motion to correct error, which the court denied.

### Discussion

[10] Mother claims the trial court erred in relying on Church's testimony and in further restricting her visitation, the court's findings do not support its order, and the court abused its discretion in ordering her to pay attorney fees. Father maintains the court's findings are supported by the record, Mother placed her

parenting time at issue in her motion and at the hearing, the Joint Agreement identified T. and J. by name, and the court did not abuse its discretion in awarding attorney fees.

[11] The Indiana Supreme Court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Appellate deference to the determinations of trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children. *Id.*

[12] When a trial court has made findings of fact, we apply the following two-step standard of review: whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* We generally review rulings on motions to correct error for an abuse of discretion. *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 18 (Ind. Ct. App. 2015).

[13] A decision about parenting time requires foremost consideration be given to the best interests of the child. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013); *see also* Ind. Code § 31-17-4-2 ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."). Parenting time decisions are reviewed for an abuse of discretion. *Perkinson*, 989 N.E.2d at 761. Indiana courts may deviate from the Parenting Time Guidelines upon making a written explanation indicating why the deviation is necessary or appropriate in the case. *See* Preamble, Ind. Parenting Time Guidelines.

[14] Any issue not set out in the pleadings may be tried by the express or implied consent of the parties pursuant to Ind. Trial Rule 15(B). *In re V.C.*, 867 N.E.2d 167, 178 (Ind. Ct. App. 2007); Ind. Trial Rule 15(B) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Where, as here, the evidentiary hearing ends without objection to any new issue, the evidence actually presented at trial controls, and consequently neither pleadings nor theories proposed by the parties frustrate the trier of fact from finding the facts that a preponderance of the evidence permits. *See In re V.C.*, 867 N.E.2d at 178. In her motion, Mother alleged Father was denying her all visitations and sought visitation under the terms of the Joint Agreement. At the hearing,

Mother indicated Father would not permit her to have parenting time until she disclosed where she lived, Father's counsel questioned Mother regarding the concern that she would allow T. or J. to have access to the children and her interactions with the children, Father testified regarding Mother's behavior and interaction with the children, and that he did not trust Mother or her father. Father's counsel asked both Mother and Father whether the court should require that Mother's parenting time be supervised by their therapist. The terms of Mother's parenting time, including the extent to which it should be supervised, were tried with Mother's consent.

[15] We turn to the court's findings and order. The parties entered into the Joint Agreement and do not dispute its terms. Mother did not object to Church's testimony at the June 21, 2019 hearing.[3] Neither does she challenge the admission of her or Father's testimony. The Joint Agreement provided Father would have sole legal and primary physical custody and Mother "shall not allow the children to have any contact with [T.], boyfriend of Mother, or [J.], Father of [Mother], subject to further order of this court." Appellant's Appendix Volume II at 98. The court entered findings regarding the importance of Mother disclosing where she physically resided, her lack of credibility, and her failure to comply with court orders. We will not reweigh the trial court's consideration of Mother's credibility. The testimony of Mother

---

[3] At the hearing, Mother did not assert Church's testimony should have been excluded from public access, and Mother has not complied with Ind. Appellate Rule 28(F)(3) (Procedures for Excluding Court Records from Public Access on Appeal).

and Father at the hearing provides support for the court's order that Mother's parenting time be supervised by a child or family therapist. In light of the Joint Agreement and under these circumstances, and keeping in mind our deference to trial judges in family law matters, we cannot say we are left with a firm conviction a mistake has been made or the trial court's decision is clearly erroneous.

[16] Indiana trial courts have inherent authority to award attorney fees for civil contempt. *McCallister v. McCallister*, 105 N.E.3d 1114, 1120 (Ind. Ct. App. 2018). The court has the authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions, including the award of attorney fees. *Id.* The parties' settlement agreement, incorporated into the dissolution decree, provided Mother was responsible for the debt on the Capital One credit card, and each party agreed to hold the other harmless for amounts incurred, including attorney fees, by virtue of the obligated party's failure to fulfill an obligation. The court found the evidence was sufficient to show Mother had willfully disobeyed its prior order in not making any payment on the credit card since January 2019 and rejected her claim she was unable to pay. The court ordered Mother to reimburse Father those attorney fees incurred to prosecute the contempt issue. We find no abuse of discretion.

[17] For the foregoing reasons, we affirm the trial court's July 18, 2019 order.

[18] Affirmed.

Baker, J., and Riley, J., concur.